482 A.2d 1037

**UNITED STATES NATIONAL BANK IN JOHNSTOWN, a National Banking Association**

v.

**ROBEL CONSTRUCTION, INC., and Johnstown Housing Authority.**

**Appeal of JOHNSTOWN HOUSING AUTHORITY.**

Superior Court of Pennsylvania.

Argued Aug. 2, 1984.

Filed Oct. 5, 1984.

James R. DiFrancesco, Johnstown, for appellant.

David J. Kaltenbaugh, Johnstown, for appellee.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

ROWLEY, Judge:

The issue presented in this appeal is whether the appellant, Johnstown Housing Authority (Authority), garnishee

in an execution proceeding initiated by the appellee, United States National Bank In Johnstown (Bank), "unreasonably delayed" in seeking to interplead a third party claimant (Shearer). Both Shearer and the Bank assert claims against a fund retained by the Authority pursuant to a contract between it and the defendant, Robel Construction, Inc. (Robel). The Authority filed its petition to interplead Shearer fifty-three days after it was served with the writ of execution and interrogatories. The trial court held that the Authority had unduly delayed in presenting the petition and denied the interpleader. We have determined that, on the basis of the record before us, appellant did not unreasonably delay in seeking interpleader and, therefore, reverse the order of the trial court.

The record discloses the following facts. On November 4, 1981, the Bank confessed judgment on a judgment note given to it by the defendant Robel. A writ of execution was issued naming the Authority as garnishee, and the writ, together with interrogatories, was served on the Authority on November 13, 1981. On November 30, 1981, the Authority filed an Answer and New Matter to the Bank's interrogatories. The Authority admitted that it had approximately $37,000.00 that was being claimed by Robel, the defendant, as well as by Shearer, the third party claimant.

The Authority had entered into a series of contracts with the defendant Robel, culminating in a final contract of March 6, 1978, for the repair and restoration of certain facilities owned by the Authority which were damaged during the Johnstown Flood of 1977. Shearer was a subcontractor for the defendant Robel who was the general contractor. Shearer performed some of the repair and restoration work. The fund held by the Authority constituted a portion of the contract price that had been retained by the Authority pursuant to provisions of the contract between it and Robel.

In its answer and new matter, the Authority set forth that the claim of the defendant Robel to the fund was disputed by it and that other claims had been made against

the fund by some of the subcontractors who had performed work for the defendant Robel. It was averred in the Answer and New Matter that Robel refused to provide the Authority with a certificate of completion and an affidavit that all subcontractors had been paid, both of which were necessary for him to be entitled to final payment. In addition, it was averred that the claimant Shearer is an unpaid subcontractor and had asserted a claim against the fund in the Authority's possession.

On December 8, 1981, the Bank filed a document entitled "Petition for Supplementary Relief in Aid of Execution". On December 23, 1981, the Authority filed an answer to the Bank's "Petition" in which it reiterated its own defense to Robel's claim as well as the fact that Shearer had made a claim to be paid from the money retained by the Authority. Finally, the pleadings [See Pa.R.C.P. 3145] between the Bank and the Authority were completed when the Bank, on July 20, 1982, filed its "Reply" to the Authority's "New Matter" that had been filed November 30, 1981.

In the meantime, on January 5, 1982, the Authority, pursuant to Pa.R.C.P. 2302, filed a petition to interplead the claimant Shearer. In the Bank's answer to the Authority's petition to interplead Shearer, it asserted a series of denials based upon the allegation that the information pled by the Authority was unknown to it and was within the exclusive control of the Authority and/or Shearer. On October 21, 1982, the trial court entered an order denying the petition to interplead Shearer and this appeal was timely filed by the Authority.[1]

■ The Bank correctly points out that the grant or refusal of a petition for interpleader is within the sound discretion of the trial court. However, it should be noted

1. During the summer of 1982, Shearer filed a petition to intervene in the execution proceeding. That petition was likewise denied by the trial court in the same order in which it denied the Authority's petition to interplead Shearer. However, Shearer has not filed an appeal from the trial court's order, and therefore, the denial of Shearer's petition to intervene is not before us, although that question is addressed in appellee's Brief.

that in the case cited by appellee in support of that proposition, *Maxwell v. Philadelphia Fire Department Relief Association*, 138 Pa.Super.Ct. 356, 10 A.2d 857 (1940), this Court reversed an order of the trial court denying a petition for interpleader and described the court's decision there as an "abuse of judicial discretion." Also in *Maxwell*, the Court noted that in considering a petition to interplead a third party claimant the trial court is not to inquire into the merits of the respective claims asserted against a particular fund other than to assure itself that such claims are not "frivolous or collusive." There has been no assertion on the part of any party in this case that Shearer's claim is either frivolous or collusive. Here, as in *Maxwell*, the record before us shows that there are bona fide claims being made against the fund in the Authority's possession by rival claimants, to wit, Robel and Shearer.

Pennsylvania Rule of Civil Procedure 2306(a)(1) provides that the court may deny a petition for interpleader if the party presenting it has "unreasonably delayed in *filing* the petition" (emphasis added). Thus, the critical time period is that between the date the party seeking the interpleader (Authority) is made a party to the action (November 13, 1981) and the date the petition for interpleader is filed with the court (January 5, 1982). The provision relating to an unreasonable delay was intended to protect a plaintiff where interpleader is sought after the action "had proceeded well past its initial stages". 8 *Goodrich Amram* 2d § 2306(a):2. Interpleader may be sought at any time during the time the action is pending. Thus, a party may seek interpleader "from the commencement of the action until the record is removed from the [trial] court upon appeal." 8 *Goodrich Amram* 2d § 2302:5. There is no specific time limit on when interpleader may be sought. The only limitation is that the party seeking interpleader shall not have unreasonably delayed. Our review of the record in this case discloses that there was no delay on the part of the Authority between November 13, 1981 and January 5, 1982.

■ The Authority timely filed, within seventeen days, its answer to interrogatories setting forth not only its own defense to Robel's claim against the fund but also asserting that there was a third party claimant, Shearer, who had asserted a claim against the fund that was adverse to Robel's claim. The Bank, eight days later, petitioned for "Supplementary Relief". The court directed that the Authority answer the Bank's petition by December 28, 1981. Again the Authority's answer to the petition was filed timely, that is, on December 23, 1981. Given that the Authority's petition to interplead Shearer was filed only thirteen days later, and considering the intervention of the Christmas Holidays, the filing by the Authority of its petition for interpleader cannot accurately be described as the result of delay on its part. The record shows that there was no further action taken to complete the pleadings between the Bank and the Authority until July 20, 1982, when counsel for the Bank filed a "Reply" to the Authority's Answer and New Matter which had been filed on November 30, 1981. Not only did the Authority file its petition for interpleader within fifty-three days after it was served, it did so six and one-half months *before* the pleadings between the Bank and the Authority were closed. The record shows that the Authority timely filed every responsive pleading required of it. On the other hand, the Bank's Reply was not filed until seven months after it was due. Thus, the matter was not ready for trial on the issues raised by the pleadings until after July 20, 1982. Certainly, this action had not "proceeded well past its initial stages" at the time the Authority filed its petition for interpleader. The record is devoid of any evidence that the Authority was guilty of any delay in seeking interpleader in this case.

The trial court pointed out that there were a series of delays subsequent to the filing of the Authority's petition for interpleader but as already noted the critical date in determining whether there has been an "unreasonable delay" is the date that interpleader is sought, not when a final determination is made whether it should be granted or

refused. Moreover, a review of the record shows that none of the delays that occurred following the filing of the Authority's petition can fairly be charged to it. The docket entries show that on January 15, 1982, an answer was filed by the Bank to the Authority's petition for interpleader. Subsequently, on February 2, 1982, the deposition of the Executive Director of the Authority was taken by the parties. Also at that time, certain exhibits consisting of agreements, a memorandum of understanding, and a letter were made a part of the record. Counsel for the Bank filed a brief on July 26, 1982 and on August 17, 1982, the Authority filed a reply brief. On August 26, 1982, the case was argued before the court. Also during that summer, Shearer sought to intervene and the Bank opposed his request.[2]

Finally, the record does not disclose that anything had occurred, or that the positions of the parties had changed between November 13, 1981 and January 5, 1982, that could in any way be considered to have prejudiced the Bank. Not only was there no delay during that period of time, there was no prejudice created during the fifty-three day period involved in this case. Thus, the court erred in holding that the Authority had unduly delayed in seeking interpleader only fifty-three days after it was served with the writ of execution and interrogatories and at least more than six months prior to the time the pleadings between the Authority and the Bank were completed.

The Bank argues, however, that the Authority had an opportunity in prior proceedings in 1981 to interplead the rival claimants to the fund and that its failure to do so then constituted an unreasonable delay which bars interpleader. One of those prior proceedings was an assumpsit action commenced by praecipe on May 29, 1981, by Robel against

**2.** In this connection, although not an issue before us, it is interesting to note that in its answer and new matter to Shearer's petition for intervention the Bank averred, inter alia, that the "interest of Edward C. Shearer, Jr., t/d/b/a Shearer and Company, petitioner herein is already adequately represented, namely, by the interpleader filed by Johnstown Housing Authority, defendant herein."

the Authority. However, Robel never filed a complaint in that case and a default judgment was entered against it on August 10, 1981. Shearer also commenced two actions against the Authority. One action was filed in the United States District Court for the Western District of Pennsylvania. Simultaneously, an action in assumpsit was commenced in Cambria County by filing a praecipe against the Authority. Subsequently, the Authority's motion to dismiss the federal case was granted without prejudice. On the other hand, in the action filed in Cambria County, Shearer's complaint was not filed until December 28, 1981, after the Authority had already filed its response to the Bank's petition for supplementary relief. The Bank, of course, was not a party in any of those proceedings. Thus, the Bank is not in a position to complain about the Authority's failure to seek interpleader in any of the other three actions. Moreover, it is difficult to determine what prejudice the Bank may have suffered by the Authority's failure to successfully interplead either Robel or Shearer in any of the three prior actions. Had such an interpleader been successful in any of those actions, the fund would no longer have been in the Authority's possession on November 13, 1981, when the Bank's writ of execution and interrogatories were served on it. The Bank, on the contrary, would have been required to seek intervention in those suits as an additional claimant. Even had that been accomplished, the Bank would then be in the same position it will be in in this case if the Authority is permitted to interplead Shearer as a claimant against the fund.

Therefore, we hold that the trial court erred in holding that the Authority had unreasonably delayed in seeking interpleader and for that reason the trial court's order denying interpleader is reversed and the case is remanded to the trial court with directions that the petition for interpleader be granted.

Jurisdiction is relinquished.